UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RONALD W. McGEE** | : | **DOCKET NO. 2:10-cv-1826** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court finds that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## PROCEDURAL HISTORY

On April 25, 2005, plaintiff filed an application for disability insurance benefits and supplemental security income alleging disability beginning on February 15, 2004. Tr. 116-120. The claim was initially denied on August 23, 2005. Tr. 95-98. Following an administrative hearing held on April 19, 2007, the Administrative Law Judge (ALJ) issued an unfavorable decision on September 8, 2007. Tr. 37-50. Plaintiff appealed that decision and on January 28,

2009 the Appeals Council remanded the mater for further evaluation of plaintiff's mental functioning in assessing plaintiff's residual functional capacity (RFC). Tr. 23-25.

Following a second administrative hearing held on July 17, 2009, the ALJ issued an unfavorable decision dated November 18, 2009. Tr. 12-22. In this decision, the ALJ found plaintiff retained the RFC to perform a limited range of light work with certain restrictions. The ALJ found that although plaintiff could not perform his past relevant work, there existed other work in significant numbers in the national economy that plaintiff was capable of performing. Thus, the ALJ determined that plaintiff was not disabled. *Id.*

Plaintiff filed a request for appellate review of this decision and on October 14, 2010, his request was denied. Tr. 4-7. On December 8, 2010, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## FACTS AND MEDICAL EVIDENCE

Plaintiff, age 49 at the time of his hearing, is a high school graduate. Tr. 501. He testified that he was last employed at Wal Mart in shipping and receiving. Tr. 503. He worked at Wal Mart for approximately three months before he was laid off on December 27, 2004. *Id.* The reason he was laid off, according to plaintiff, was because he had problems dealing with his diabetes while working. *Id.* He stated that while at work he fell a couple of times because his legs "got like rubber" and he suffered an anxiety attack causing him to leave work. *Id.*

Prior to his position at Wal Mart, plaintiff was employed from December 2002 through February 2004 as a Deputy Sheriff assigned to the jail in Oberlin, Louisiana. Tr. 157, 504. From April 2000 to April 2001 he was employed as a Correctional Officer. *Id.* He worked as a delivery clerk from August 1999 to March 2000. Tr. 157. His longest employment was at the

Boise Cascade paper mill where he was employed from November 1981 through June 1998.  Tr. 157, 504-05.

Plaintiff testified that he has suffered with an irregular heartbeat and angina pectoris since 2004 which is controlled with medication.  Tr. 506.  He has suffered with diabetes for 30 years.  Tr. 516.  He suffers with peripheral neuropathy in both feet which causes his feet to burn and tingle if his blood sugar goes up.  Tr. 507, 515.  He has had problems with his vision as a result of the diabetes and has had five surgeries on his left eye.  Tr. 507.  He can see up close with his left eye but not at a distance and not at night.  His vision in his right eye is good.  Tr. 508-510.  He takes four insulin shots a day to control his diabetes.  Tr. 528.  It takes him approximately ten to fifteen minutes to test his blood sugar and administer the insulin shot.  When he was working, he tried to administer insulin at least two times during the workday.  Tr. 529.  If he was at work and his blood sugar dropped he was forced to take a break for approximately thirty minutes so that his blood sugar would get back to within normal range.  Tr. 534.

Plaintiff stated that he suffered from a "mini stroke" in the past which resulted in right sided weakness.  He stated that his strength in his right arm and leg are not as good as that in his left.  He writes with his right hand but uses his left hand for everything else.  He acknowledged that there was not anything that he could not do as a result of this weakness in his right arm and leg.  Tr. 511-12.  Plaintiff additionally stated that he suffers from chronic diarrhea which he attributed to his medications, [tr. 512.] and suffers from arthritis in his hands.  Tr. 513.  He takes aspirin every six hours which he stated controls the pain in his hands.  *Id.*

Plaintiff testified that he suffers from depression and takes medication which at times helps.  Tr. 518.  He has problems sleeping at night.  He stated that sometimes he only sleeps two to three hours and this can last from three to five days.  He takes naps during the day for fatigue

or because of lightheadedness from fluctuations in his blood sugar. Tr. 519, 524. He has tried medicine to help him sleep but it is not effective. Tr. 520. He stated that his feet swell when he is sitting down and/or standing and he can only wear shoes for two to three hours before he has to remove them and elevate his feet. Tr. 526-27. He has problems sitting and can only sit for fifteen to twenty minutes before he has to get up and move around. If he sits for a long time his legs go numb. He can stand for about an hour after which his legs, feet and back hurt. Tr. 523.

On a typical day plaintiff testified that he gets up at about 11:45 and watches a soap opera from 12:30 to 1:30. He will sometimes go with his father to McDonald's to get a soft drink and comes back home and either goes to bed or sits on his porch for four to five hours. Tr. 520, 525. He is able to wash dishes, which he claims is his most difficult chore because of the burning in his fingers, wash clothes, drive, grocery shop, rake leaves, cook, and clean his house. Tr. 520-22. He also reads the newspaper and cares for his pet bird. Tr. 525. He is able to drive himself to the medical center for doctor visits and to have his prescriptions refilled. His son mows his yard. Tr. 521. He does not do much lifting and tries to walk around the block for exercise every day. Tr. 523.

The medical evidence submitted shows that plaintiff was admitted to the hospital in February 2003 for an episode of syncope. Plaintiff stated that he walked into his house, felt lightheaded and passed out. The diagnostic impression upon discharge was that plaintiff suffered from diabetes mellitus type 1, poorly controlled, diabetic retinopathy, syncope secondary to hypoglycemic versus arrhythmia, hypertension, 7th, 8th, and 9th rib fracture, depression, and gastro esophageal reflux disease (GERD). Tr. 180-81. In June 2003 he was treated at the emergency room for right knee pain and an infected toenail. He complained of lightheadedness and the emergency room notes indicate he was not taking his insulin. Tr. 233-34. At a

November 2003 check up for hypertension, plaintiff complained of blurry vision which he claimed occurs when his blood sugar is too high. It was noted that his diabetes was not well controlled. Tr. 217-18. In November of 2004 plaintiff was seen at the emergency room complaining of an anxiety attack and insomnia. Tr. 235-40.

On June 22, 2005, plaintiff was seen by Dr. James Quillin for a psychological examination at the request of the Social Security Administration. Plaintiff complained of sleep problems, increased appetite, low energy, constriction of interests, limited social function, and crying in sad situations. He reported that he had been prescribed antidepressant medications in the past but was not currently able to afford them. A mental examination revealed mild to moderate stable depression with no psychosis. Plaintiff's cognitive functioning was noted to be generally intact. Plaintiff's diagnosis was mild to moderate depression. Dr. Quillin additionally noted that he was capable of managing funds and found his ability to cope with stressful situations compromised. Tr. 247-48.

Plaintiff was seen on July 9, 2005, by Dr. Stephanie Abram for a consultative physical examination. He complained of difficulty controlling his blood sugar, diarrhea, fatigue, chest pain brought on by stress, and vision problems. He reported that he could stand for thirty minutes to an hour, sit for about two hours, and lift three to five pounds. He stated that he can dress and feed himself, shop, vacuum, mow the grass, cook and do the dishes. He stated that three to four times a week he suffers from a headache that is brought on by stress and increased blood sugar. Tr. 263-66.

Dr. Abram's physical exam showed that plaintiff ambulated normally. His grip strength on the left was 5/5 and -5/5 on the right. She noted that plaintiff could perform fine and gross motor movements. Plaintiff exhibited no atrophy or bony deformities or joint swelling in any

extremities.  His range of motion in his elbow, forearm, wrist, shoulder, cervical spine, lumbar spine, hip, knee and ankle was all within normal range.  His sensation in his left foot was 8/10 and 10/10 in the right.  Motor strength on both right and left side, upper and lower, was 5/5.  *Id.*

Dr Abram's diagnostic impression following the examination was that plaintiff suffered some right sided weakness following a 2001 cerebral vascular accident but the weakness has no affect on his ability to ambulate or hold objects.  She noted some decreased sensation in his left foot, chest pain consistent with angina pectoris, diabetes with neuropathy, depression, and diarrhea related to diabetes.  *Id.*

A mental RFC was conducted on July 29, 2005.  The findings indicated plaintiff had moderate limitations in the following areas: ability to understand and remember detailed instructions, ability to carry out detailed instruction, ability to complete a normal workday without interruptions, ability to interact with general public, ability to get along with coworkers, and the ability to set realistic goals or make plans independently.  Tr. 267-70.

A physical RFC was conducted on August 22, 2005.  The findings indicated that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for six of eight hours and sit for six of eight hours.  His ability to push and/or pull was unlimited.  Tr. 271-78.

On August 29, 2005, plaintiff sought treatment for anxiety, legs hurting, feet burning, and lightheadedness.  It was noted among other things that plaintiff had very poorly controlled diabetes and hypertension.  Tr. 288-91.  He was referred to the diabetic clinic at Huey P. Long Medical Center [tr. 339] where he was treated with additional complains of insomnia, shoulder and leg pain [tr. 329],and feet tingling and numbness [tr.322, 328].

In March 2007 plaintiff was seen at the emergency room complaining that he had fallen when he got up to answer the doorbell. He denied losing consciousness and attributed the fall to low blood sugar. Tr. 462-73.

Plaintiff underwent surgery on September 18, 2007, for a non-clearing vitreous hemorrhage, left eye. Tr. 417. In December 2007 and March 2008 he underwent additional surgeries on his left eye for detached retina. Tr. 395, 407.

On December 16, 2008, plaintiff was seen for trouble sleeping, poor appetite, and low energy and on May 22, 2009, he was seen for follow up concerning his diabetes, hypertension and GERD. He denied foot pain, chest pain, shortness of breath, and his neurological examination was grossly intact. Tr. 435, 436.

Based on the medical evidence, the ALJ found that plaintiff suffered from the severe impairments of "insulin dependent diabetes mellitus, diabetic neuropathy, recent left eye blindness secondary to diabetic retinopathy and retinal detachment, a history of cardiac arrhythmia, status post probable transient ischemic attack in 2003 with residual right sided weakness, and mild to moderate depression." Tr. 18.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

(quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[1]; (3) whether the claimant's

---

[1] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

> impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. §

---

According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at step five of the sequential analysis. Specifically, the ALJ found, "[c]onsidering his age, education, past work experience, and residual functional capacity, there is other work existing in significant numbers in the national economy that Claimant is capable of performing." Tr. p. 22.

In his appeal plaintiff argues that substantial evidence does not support the ALJ's decision. Specifically he lists the following statements of error: (1) the medical evidence, when considered as a whole, does not support the ALJ's assessment of plaintiff's RFC; (2) the ALJ did not give consideration to plaintiff's long work history in assessing his credibility; (3) the decision contains no discussion of why plaintiff's impairments of diabetic neuropathy and right sided weakness would not limit his ability to stand and walk or to grasp, handle, hold, and manipulate objects on a repetitive basis; (4) the ALJ failed to consider what effect variations plaintiff's variations in blood sugar levels would have on his ability to function as a dependable and reliable employee; and (5) the ALJ failed to take into account plaintiff's chronic diarrhea. Doc. 9, pp. 4-5. Statements of error number 1, 3, 4 and 5 all involve issues concerning the ALJ's assessment of plaintiff's RFC; thus they will be discussed together.

**1. Does the medical evidence support the ALJ's assessment of plaintiff's RFC?**

Plaintiff argues that when considered as a whole the medical evidence does not support the ALJ's assessment of plaintiff's RFC. He states that the ALJ failed to comply with SSR 96-8p which requires that he include a "narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Plaintiff submits that the ALJ's decision contains no discussion of plaintiff's severe impairments of diabetic neuropathy and right sided weakness and how these limitations would not limit his ability to stand and walk or grasp and manipulate objects on a repetitive basis. Additionally, plaintiff argues that the ALJ did not take into consideration his variations in blood sugar and his testimony that he needed to spend two ten to fifteen minute sessions administering insulin each eight hour work day. Finally, plaintiff argues that the ALJ failed to consider his chronic diarrhea and his testimony that it requires him to take unscheduled breaks during the work day.

The Commissioner asserts that the ALJ's findings comport with the medical evidence submitted and support his finding that plaintiff retained the RFC to perform a limited range of light work.

The ALJ found that the weight of credible evidence indicated that plaintiff could perform the exertional and non-exertional requirements for a limited range of light level work. He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could sit for six hours in an eight hour day with normal breaks. He found that he could stand and/or walk for six hours in an eight hour day with normal breaks. Plaintiff's left eye blindness precluded him from work requiring depth perception. He stated that plaintiff should avoid temperature extremes and exposure to workplace hazards such as unprotected heights or dangerous moving machinery. Mentally, he found that plaintiff could perform simple, repetitive tasks and which involve only occasional contact with the general public. Tr. 20. These finding are consistent with the RFC and the physical exam conducted by Dr. Abram on July 9, 2005. The ALJ noted that when plaintiff was asked at the hearing if his symptoms were any worse since his physical with Dr.

-11-

Abram he replied, "a little worse." Tr. 20, 535. Dr Abram's exam showed that plaintiff ambulated normally. His grip strength on the left was 5/5 and -5/5 on the right. She noted that plaintiff could perform fine and gross motor movements. Plaintiff exhibited no atrophy or bony deformities or joint swelling in any extremities. His range of motion in his elbow, forearm, wrist, shoulder, cervical spine, lumbar spine, hip, knee and ankle was all normal. His sensation in his left foot was 8/10 and 10/10 in the right. Motor strength on both right and left side, upper and lower, was 5/5.

Dr. Abram's diagnostic impression following the examination was that plaintiff suffered some right sided weakness following a 2001 cerebral vascular accident but the weakness has no affect on his ability to ambulate or hold objects. She noted some decreased sensation in his left foot, chest pain consistent with angina pectoris, diabetes with neuropathy, depression, and diarrhea related to diabetes.

Plaintiff has not submitted any medical evidence or documentation in contradiction to these findings nor has he submitted any medical evidence confirming that his condition has worsened. Plaintiff's own testimony concerning his symptoms and limitations was considered partially credible by the ALJ. In his decision, he stated:

> While his [plaintiff's] medically determinable conditions can reasonably be expected to cause some symptoms and limitations, the weight of the evidence does not support the alleged degree or variety of symptoms and limitations.

Tr. 20.

### a. *Diabetic neuropathy and right sided weakness*

Plaintiff asserts that he is losing functional ability in his hands and feet and experiencing increased swelling and pain from standing. He also argues that his right sided weakness limits his ability to stand, walk, grasp, handle, hold and manipulate objects on a repetitive basis.

In his decision, the ALJ pointed out that the medical records do not indicate acute or permanent neuropathy. The 2005 consultative exam gave an 8/10 diminished sensation in one foot and an exam in May 2009 indicated intact neurological functioning. The consult exam indicated only slight residual right sided weakness which does not affect his ability to walk or handle objects. Tr. 20. The ALJ noted that medical records submitted reflect sporadic complaints of tingling or numbness in the feet. The ALJ additionally noted that when asked about his residual right sided weakness, plaintiff admitted that it did not limit him in performing any tasks. Tr. 19, 512.

The court finds that the ALJ considered the plaintiff's symptoms of diabetic neuropathy and right sided weakness and medical evidence submitted and that substantial evidence supports his decision.

### b.  *Variations in blood sugar*

Plaintiff maintains that the frequency and severity of his hypoglycemic episodes limit his ability to function as a dependable and reliable employee in a competitive work environment.

The ALJ recognized that plaintiff has received treatment for insulin dependent diabetes mellitus with some indications of poor control, noncompliance with medication and diet, and complaints of shaking, lightheadedness, burning in the feet and tingling in the hands. Tr. 17. The ALJ also considered a documented syncope secondary to hypoglycemia which occurred on February 10, 2003, however, this occurred before the alleged onset of disability. *Id.* The ALJ's decision notes that in 2007 plaintiff sought emergency room treatment for a fall that he attributed to low blood sugar [tr. 18] and that he was seen for follow up for diabetes, hypertension, depression and GERD and at that time his blood sugar levels were between 90 to 110. *Id.*

The court finds that the ALJ considered plaintiff's symptoms of variations in blood sugar and the extent to which those symptoms were consistent with the medial evidence and concludes that the decision of the ALJ is supported by substantial evidence.

### c. Chronic diarrhea

Plaintiff argues that the ALJ failed to take into account his chronic diarrhea and his testimony that it occurs several times a day and causes him to take unscheduled breaks during the work day.

The record indicates that the ALJ considered plaintiff's complaints of diarrhea but found that this condition was not "supported by significant medical evidence." Tr. 18. The medical evidence submitted shows only two reported complaints of diarrhea. On November 5, 2004, when plaintiff was admitted to the emergency room for uncontrollable shaking, the admit notes show a report of "diarrhea this p.m." Tr. 237. At the 2005 consultative exam, plaintiff reported that he has constant diarrhea which the doctor found related to diabetes and noted that if plaintiff could get his diabetes under control it would alleviate a lot of his symptoms. Tr. 264-66.

The court finds that plaintiff's allegation that the ALJ failed to take into account his diarrhea is not supported by the record. The court finds that the ALJ did consider plaintiff's symptoms of chronic diarrhea and that substantial evidence supports the ALJ's decision.

**2. Did the ALJ err in failing to give consideration to plaintiff's long work history when assessing his credibility?**

Plaintiff argues that the ALJ failed to give any consideration to the fact that he maintained consistent employment up until the alleged date of disability including eighteen years in the Boise Cascade paper mill. Plaintiff cites 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and several cases in support of his contention that testimony from a claimant with a good work history should be given substantial credibility.

-14-

The Commissioner points out that the cases cited by plaintiff are non-controlling, out-of-circuit decisions that do not support a claim of *per se* error. The Commissioner further argues that the Fifth Circuit Court of Appeals has not adopted any such rule of law and that plaintiff has not articulated a basis for reversal.

Both 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) state that in evaluating symptoms, including pain, the ALJ "will consider all of the evidence presented, including information about *your prior work record*, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons." (emphasis added). In a case cited by plaintiff, *Rivera v. Schweiker,* 717 F.2d 719, 725 (2nd Cir.1983), the court noted that plaintiff, a claimant with t a thirty-two year employment history, was entitled to substantial credibility when claiming an inability to work because of a disability.[2]

The court agrees with the Commissioner. According to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms. Additionally, the Fifth Circuit has not adopted the rule of law cited by plaintiff and espoused in the Second and Third Circuits. We find that plaintiff's work history following his eighteen year period at the paper mill does not show consistent employment and does not compel any conclusion regarding his credibility.

The ALJ may determine credibility and weigh testimony. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.2000). In this case, the ALJ gave sufficient reasons for his finding that plaintiff's allegations concerning his symptoms were "partially credible." Tr. 20. The ALJ noted that the "degree and variety" plaintiff's symptoms and limitation were not supported by objective medical evidence and found that his allegations of limited activities were overstated in

---

[2] The other cases cited by plaintiff, *Tayborn v. Harris,* 667 F.2d 412, 415 n.6 (3rd Cir.1984), and *Tyson v. Apfel*, 107 F.Supp.2d 1267, 1270 (D.Colo. 2000), also stand for the proposition that a claimant with a long work history should be afforded substantial credibility when he asserts that he is unable to work

comparison to his admitted daily activities. Tr. 20. This court concludes that the ALJ's decision was sufficient to meet the requirements of 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and is supported by substantial evidence.

## CONCLUSION

Substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff was not disabled. Therefore, it is RECOMMENDED that the ALJ's decision be AFFIRMED and this matter DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 25th day of November, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE